### R. L. BAILEY v. THE STATE.

*No 1364. Decided December 9th, 1896.*

**1. Seduction—Proof that the Prosecutrix was Unmarried**

On a trial for seduction, evidence that the prosecutrix was called "Miss;" that she lived with her mother; that she received the addresses of defendant, and that they were engaged to be married, is sufficient proof that the prosecutrix was unmarried.

**2. Same—Proof of Engagement to Marry.**

Testimony of the mother of the prosecutrix, that defendant was frequently, about once a week, at her house, visiting her daughter: that defendant told her that he and her daughter were to be married, and asked her consent to the marriage, which she gave, is sufficient proof of the engagement of the parties to marry.

**3. Same—Proof of Sexual Intercourse.**

In seduction, sexual intercourse of the parties may be proved by circumstantial evidence, and where the evidence showed that defendant said, that he was going to have intercourse with the prosecutrix; that they went to an hotel, and claimed to be man and wife, and stayed all night in the same room. Held: Sufficient proof of sexual intercourse between the parties.

**4. Same—Promise of Marriage not Necessary to be Repeated.**

Where there has been a previous promise to marry made by the defendant, and the carnal intercourse of the parties was the consequence of such prior promise of marriage, it does not matter whether this promise was, or was not, repeated at the time the parties had such carnal intercourse with each other. If the previous promise was the cause of the illicit intercourse, that would be sufficient.

APPEAL from the District Court of Grayson. Tried below before Hon. DON A. BLISS.

Appeal from a conviction for seduction; penalty, five years' imprisonment in the penitentiary.

This is the second appeal taken in this case. The judgment of conviction on the former appeal was reversed for admission of illegal testimony and error of omission in the charge of the court. That case will be found reported as Bailey v. State, 30 S. W. Rep., 669.

The following are substantially the facts, as proved on the second trial, from which this appeal is taken:

Mrs. Adaline Hardin, mother of the prosecutrix, testified: Addie Hardin died July 13th, 1894. For a month or two before her death appellant was at her mother's house, to see Addie, about once a week. About two weeks before Addie's death, appellant told Addie's mother that he and Addie were engaged to be married, and asked her consent to the marriage, which she gave. Addie and appellant said they were going to be married on July 22nd, 1894. On the afternoon of July 11th, 1894, Addie left home in a buggy, with appellant, and did not return home un-

til noon Sunday, July 12th, 1894, when some gentleman came home with her in a hack. Addie's mother's home is about two miles from Van Alstyne. At the time of her death Addie Hardin was seventeen years old; she had been receiving the attentions of young men and going to social gatherings in the neighborhood for about three years before her death. Ranzy McMakin had been paying her attention before appellant commenced going with her. Addie Hardin was tall and slender and had light hair. A. F. Hardin, a brother of Addie's, saw Addie and appellant together at McCann's hotel, in Van Alstyne, about 8 p. m., on July 11th, 1894, and Addie and appellant told him that she (Addie) and appellant were married. He (A. F. Hardin) was in Van Alstyne on the afternoon of July 11th, 1894, and went out home late in the afternoon, and when his sister Addie didn't return he went back to town to see about her, and when she and appellant both told him they were married he went on back home.

Newton Taylor was engaged in running a hotel in Van Alstyne in 1894. On the night of July 11th, 1894, after dark, appellant came to Taylor's hotel with a lady, whom he spoke of as his wife, and said he wanted a room for the night for himself and his wife. Appellant spoke of the lady as his wife, and the lady spoke of appellant as her husband. They were assigned a room which contained a bed and a lounge, and they went into the room, and Taylor supposed they occupied it all night. Taylor saw them the next morning at breakfast. After breakfast appellant left and went down town and Taylor saw him no more; later the lady left. Taylor never saw this lady before or after she was at his hotel. She was tall, slender, with light hair, and about seventeen years old.

Hunnell was engaged in the livery business at Van Alstyne in 1894. He let appellant have a buggy and team on the afternoon of July 11th, 1894; he afterward saw appellant and Addie Hardin riding in this buggy, and on the same afternoon he saw appellant and Addie together at McCann's hotel. After dark on the evening of July 11th, 1894, he saw appellant and Addie going east from the direction of McCann's hotel and toward the railroad; he saw Addie stop and heard her say, "I don't want to go," when appellant caught her by the arm and said, "Oh, come on." They then went on across the railroad and out of his sight. Most of the town of Van Alstyne is west of the railroad; there is a lumber yard east of the railroad at the point that appellant crossed it. When Hunnell saw appellant and Addie coming from the direction of McCann's hotel and going east toward the railroad, it was dark and he paid no particular attention to them. On the next day one of his men at the stable took Addie Hardin home in a buggy. Hunnell did not remember to have testified on a former trial of this case last March that he did not know who the girl with appellant that night was.

On the night of July 11th, 1894, shortly after the 9 o'clock train passed, appellant and Addie Hardin were at the depot at Van Alstyne together. They asked where they could find a hotel, and were directed

to Taylor's hotel, and went off together in the direction of that hotel. Before appellant commenced visiting Addie Hardin, Ranzy McMakin used to visit her a great deal. When Ranzy first saw her he was in love with her; he never was engaged to her; he hugged and kissed her a good deal, but he never did have carnal intercourse with her; he talked to her about it several times, but she always told him she would not let any man have intercourse with her unless she was engaged to marry him and believed she was going to marry him. About the time appellant commenced going with Addie, in a conversation down in the field one day, he told Ranzy that he was going to have intercourse with Addie, but that he had no idea of marrying her. This was about three months before Addie's death. Ranzy told Addie that he loved her, and asked her to kiss him as much as a half dozen times on different occasions, before she would do so. Addie never did state positively that she would permit one to whom she was engaged to have intercourse with her; she said if she was engaged to a man and believed he intended to marry her, she might let him have intercourse with her.

Echols was constable at Van Alstyne in 1894. He saw Addie Hardin on the streets of Van Alstyne on the morning of July 12th, 1894; he says she asked him if he had seen Mr. Bailey (the defendant) or knew where he was. Echols arrested appellant on the evening of July 14th, 1894, near Trenton, in Fannin County, about thirty miles east of Van Alstyne.

Stroud was a juror on the trial of this case, in March, 1895. His recollection is, that Hunnell testified on that trial that he saw appellant and a girl coming from the direction of McCann's hotel, and going east toward the railroad, on the night of July 11th, 1894, but that Hunnell said that he did not know who the girl was.

John Hanning was 16 years old, and lived about three hundred yards from Addie Hardin; knew her and saw her frequently. He never visited her, and never was a great deal in her company. One night as he was going to church he overtook Addie Hardin and her brother, and went along with them. He and Addie fell back behind the rest of the crowd, and were talking. Addie asked him if he was going to the old settler's picnic at Sherman; he told her no; she said she was going, and that he ought to go; that he could have a good time. She said that she went to a picnic at Sherman once and stayed two days and nights, and that she would go to the picnic in the day time, and then dance some at night, and then she and the young man would go to the hotel and put up as man and wife. Having said nothing to her to cause her to tell him these things, she told him voluntarily; he had never said anything to her about having intercourse with her before that time, at that time, or afterwards. He afterwards told his father about this; he never testified on a former trial of this case.

Appellant worked for W. B. McMakin during the first half of 1894. His time was out, and McMakin settled with him about July 1st, 1894. At that time appellant spoke of going to Fannin County or Dallas, to

see if he could find work. McMakin never heard of appellant being charged with any offense until his arrest in this case. His reputation up to this time was that of a good, law-abiding citizen and a hard working boy.

Appellant is 26 years old; he was born and raised in Coffee County, Tenn.; his people live in Tennessee, and his reputation as a law-abiding citizen has always been good.

Justice McKinney knew Addie for several years, and never heard anything against her reputation for chastity.

Addie Hardin's mother, in rebuttal, said Addie never stayed all night at a picnic in Sherman, in her life; Addie attended the old settler's picnic at Sherman, in the summer of 1893, but she did not stay all night.

*Hazlewood & Smith*, for appellant.—To constitute seduction, the female must submit to carnal intercourse by reason of a promise of marriage made or reiterated at the time of the seduction. Putnam v. State, 29 Tex. Crim. App., 454; Carney v. State, 79 Ala., 14; Phillips v. State, 108 Ind., 406; De Fore v. State, 64 Mich., 693; O'Neill v. State, 85 Ga., 383; Snodgrass v. State, 31 S. W. Rep., 366.

The law is that three facts must concur to constitute the crime of seduction: A promise to marry, seduction and carnal knowledge, and certainly the evidence fails to establish the crime in this case. There is a promise to marry shown, but this promise is in no way shown to have any logical connection with the other facts necessary to constitute the crime of seduction. It was not made at the time of the alleged seduction, and even if the State has shown carnal intercourse, this promise cannot avail anything, for there is nothing in the record to show that intercourse was submitted to by reason of it. Mr. Bishop, in his Statutory Crimes, par. 638, says that which is settled law: "Though the parties are already under marriage engagement, if the woman yields, not by reason of the man's promise of marriage, but simply for the gratification of a criminal desire, he does not commit the offense." Now if there is any strength in the presumption of innocence, the law would certainly not presume, in the absence of any other proof that the female submitted, by reason of the promise of marriage, when there is no proof except an engagement and intercourse.

The State has never proven carnal knowledge of Addie Hardin, if so, when? Hunnell and Holliday saw appellant and Addie on the streets of Van Alstyne, on the night of July 11th, 1894, and they were seen at McCann's hotel, but nothing improper is shown at these times, and no proof of intercourse can be predicated on their testimony. If carnal knowledge is shown at all, it must have been at Taylor's hotel. What lady was at that hotel with appellant? The evidence does not fully prove that it was Addie Hardin. The circumstance of A. F. Hardin seeing appellant and Addie together at McCann's hotel, the afternoon of that day; of Hunnell seeing them together on the streets of Van Alstyne that night; of Holliday seeing them together at the depot that

night; of their enquiring for a hotel, of their being directed to Taylor's hotel; of their going in the direction of that hotel; of the lady that was at Taylor's hotel being tall, slender and light haired, and about seventeen years old, like Addie Hardin, and of Addie Hardin asking for appellant on the streets of Van Alstyne the next morning, do raise a strong probability that it was Addie Hardin with appellant. They do not exclude every other reasonable hypothesis, and they do not prove beyond a reasonable doubt that it was her. For the purpose of this argument, say it was Addie; then what do we have? Three months before the alleged seduction, appellant said he was going to have intercourse with Addie, but that he had no idea of marrying her; before they went to Taylor's appellant and Addie both told Addie's brother that they were married; when they got to the hotel he called Addie his wife, and she called appellant her husband, and he got a room for himself and wife for the night; they were assigned a room containing a bed and a lounge; they went into the room; Taylor supposed they occupied it all night; he saw them next morning at breakfast; he left and then Addie Hardin left— that is the evidence. Does it prove carnal knowledge? Let us test it by the rules of law and wisdom. In Richardson's case, 34 Texas 143, a married man and a colored woman—not his wife—lived together for a series of months in the same room, wherein there was but one bed, and with no other attendant but a small child, and it was held sufficient to warrant a conviction of adultery. Mr. Bishop, in speaking of adultery in his Statutory Crimes, par. 679, says: "One of the common forms of circumstantial evidence consists of showing a purpose or inclination to commit adultery and the opportunity: that is, an adulteror's mind in the accused, the same in the person with whom the offense is charged, and a time and place, and the inference is more or less readily drawn that what was sought and could be, was." This is the rule in adultery; a more stringent rule is necessary in seduction. The facts in Richardson's case are infinitely stronger than in the case above. The declaration made by appellant to Ranzy McMakin three months before may show the adulterous mind of the accused, but remote in time; the occupancy of the room may show the opportunity, but, if the statement of Addie to her brother shows the adulterous mind in Addie it proves a great deal too much, for if she had this mind she was not the subject of seduction, and this would forever rebut the idea that any seducing or persuading was necessary in order to have the carnal knowledge, but no such conclusion can be reached from this statement of the girl, nor from the remote declaration of appellant. This proof does not come up to even this rule laid down by Mr. Bishop in adultery. The proof is unsatisfactory; the mind reaches out after facts that the record should speak, and on which it is silent. We don't know whether the room was lighted all night or dark. The presumption of innocence says that if they slept at all, one slept on the lounge and the other in the bed. This record is silent as to whether the bed was slept on or not; there is no evidence of the cover being turned down or the pillows

being mashed. No examination of the dead girl was made, though such an examination might at least have disclosed whether any body ever had intercourse with her. The evidence does not exclude every reasonable hypothesis but guilt. The spectre of the poor dead girl is placed on parade in this case and is made to hover around it throughout, but this prosecution is based on unwarranted ideas of her debauchery, that is a slander to her memory.

As to the other constituent of the offense, the seduction, the record is silent. There is not a circumstance of persuasian, or a circumstance of any attempt to lead away in the whole record. If it enters into the crime, it did not enter into this conviction. It is an element of the crime; is it to be proved or presumed? In this case it was presumed. The law says it must be fully proved. On account of the utter failure to offer any evidence that tended to prove this element of the crime, appellant asked the following instruction, which was refused: "The evidence in this case wholly fails to show any seducing on the part of defendant, and you will find him not guilty," and we contend that such an instruction would have been proper, under the circumstances of this case.

There is no proof that the alleged seduced female was unmarried. It might be inferred that she lived in the house with her mother for a month before the seduction, from her mother's evidence; she had her mother's name, and was engaged to be married. A widow cannot be seduced (21 Amer. and Eng. Ency. of Law, 1051, note 1). All these things might very naturally be true of a divorced woman. Our contention is that this proof is insufficient.

On the whole, we say that the evidence does not support the verdict, and that the court erred in refusing appellant a new trial, and that for this error this case ought to be reversed.

*Mann Trice*, Assistant Attorney-General, for the State.

HURT, PRESIDING JUDGE.—Appellant was convicted of seducing Miss Addie Hardin, and appeals. It is insisted by counsel for appellant that the proof in this case fails to show that Addie Hardin was unmarried. She lived with her mother, Mrs. Adeline Hardin. She was called "Miss Addie Hardin." She received the addresses of the defendant. They were engaged to be married. This is sufficient proof that she was an unmarried woman. See, State v. Heatherton, 60 Iowa, 175; 14 N. W. Rep., 230. Mrs. Hardin lived near the town of Van Alstyne, Grayson County. She swears that, for a month or two before Addie's death, defendant was frequently at her house, visiting her daughter, Addie Hardin. He came to her house about once a week during that time, to see Addie Hardin. They were engaged to be married. About two weeks prior to the death of Addie Hardin, appellant told her (Mrs. Hardin) that he and her daughter were going to be married, and asked her consent to the marriage, which she gave. This is sufficient proof that they were engaged to be married. Appellant con-

tends that the evidence is not sufficient to show carnal intercourse between the parties. The State must show that the appellant had carnal intercourse with Addie Hardin. There can be no seduction without this. This, however, can be proved by circumstantial evidence. Ranzy McMakin testified "that, about the time defendant commenced going with Addie Hardin, I had a conversation down in the field one day, in which defendant said that he was going to have intercourse with Addie Hardin, but that he had no idea of marrying her. That was about three months before Addie Hardin's death." In this we find a desire on the part of the appellant to have intercourse with Addie Hardin. It is shown by the testimony that, when they went to the hotel in Van Alstyne, they claimed to be man and wife; and that defendant stayed all night with her in the room at the hotel. Here was a purpose and inclination to have intercourse with Addie Hardin, and there was an opportunity to accomplish that purpose. We believe the circumstances amply sustain that part of the charge, to-wit: that he did have intercourse with Addie Hardin. See, Bishop's St. Crimes, § 679. It is contended by appellant that there is no proof in this record to show that appellant referred to or repeated the marriage engagement between the parties when he obtained carnal intercourse with Addie Hardin, in the hotel at Van Alstyne; to state the proposition in a different form: that, to constitute seduction at the time the carnal knowledge was obtained, appellant must have then promised to marry the party seduced, or that he must have alluded to the contract of marriage; that it is not sufficient if the parties be engaged to be married, but the engagement or promise must be used at the very time that carnal knowledge was obtained. We do not concur in this contention. The record shows that the appellant was engaged to be married to Addie Hardin; that he had requested her mother to permit him to marry her, to which she had agreed. The record shows that, when they went to the hotel, both claimed to be man and wife. Now, we hold that, if the promise to marry was the moving cause—that is, if the carnal intercourse was the consequence of a prior promise of marriage—it does not matter whether this promise was repeated or not at the time the parties had carnal intercourse with one another. This question arose in Armstrong v. People, 70 N. Y., 38. In that case the prosecutrix testified that the promise of marriage was made in the latter part of May, and that the illicit intercourse took place on August 5th thereafter, at the house of Dr. Kimball. The Supreme Court of New York held that, if the promise made in May (being before the seduction) was the cause of the illicit intercourse, that would be sufficient. If the rule were otherwise, in jurisdictions in which the prosecutrix is not permitted to testify, it would be almost impossible to convict; and it would be a rare case, indeed, that proof could be made that the promise of marriage was made at the time of the intercourse, and, even if such proof could be made, it might smack strongly of barter and sale. At one time in this State the prosecutrix was not a competent witness; and,

under that state of the law, prosecutions have been sustained, all the necessary elements of the crime being established by circumstantial evidence.   We are of opinion that the proof is sufficient to establish the fact that Addie Hardin was seduced and led from the path of virtue by appellant, and that he had carnal intercourse with her.   This being the case, the offense of seduction is complete.   There being no errors in the record, the judgment is affirmed.

*Affirmed.*

[NOTE.—Appellant's motion for rehearing, was overruled without a written opinion.—Reporter.]