### CHARLEY MERRELL v. THE STATE.

No. 1928. Decided May 16, 1900.

**1. Seduction—Offer in Good Faith to Marry.**

Under article 969, Penal Code, a defendant in a prosecution for seduction may absolve himself from liability if, before he pleads to the indictment or before he is convicted, he in good faith offers to marry the seduced female. "Good faith" as used in the statute means ability to consummate the marriage. Held, where defendant was under 21 years of age his defense of offering in good faith to marry, but that his mother would not consent to the marriage, is no defense under the law.

**2. Same—Death of Seduced Female.**

On a trial for seduction, where it appeared that after the seduced female became enceinte her father tried to induce defendant to marry her, and he referred the matter to his mother, who refused consent to the marriage; Held, it was no defense to the prosecution that by agreement with the seduced female defendant was not to marry her until he was 21 years of age, and that she had died before he was 21 years of age. He should have offered to marry her before her death and at a time when he might have married her.

**3. Same—Charge of Court—Definition of Seduction.**

On a trial for seduction, where the prosecutrix had died before the trial and the testimony was conflicting as to whether she was chaste before the sexual intercourse with defendant, it was error for the court in the charge to the jury to omit to define "seduction" and to refuse defendant's special requested instructions supplying the omission.

**4. Same.**

On a trial for seduction it was not error to refuse to instruct the jury to the effect that the seduction must have been on a promise to marry immediately, and not in the future.

APPEAL from the District Court of Johnson. Tried below before Hon. J. M. HALL.

Appeal from a conviction of seduction; penality, two years imprisonment in the penitentiary.

The indictment charged appellant with the seduction of Nora Livingston, an unmarried woman under the age of twenty-five years, by means of and in virtue of his (appellant's) promise to marry her. The seduction was alleged to have been accomplished on or about the 1st of June, 1898. On the 18th of March, 1899, Nora Livingston died. The indictment was presented to and filed in court on May

3, 1899. Appellant testified that he engaged to marry Nora after he had carnál intercourse with her. Her parents testified to his frequent visits to and attentions to the girl, and that he had told them they were engaged and asked their consent to the marriage. Appellant in his testimony admitted that he had asked the consent of her parents to the marriage. Both appellant and Nora were about eighteen or nineteen years of age. When it was discovered that Nora was enceinte her father demanded of appellant that he marry her, to which he replied that "he was not prepared to marry and could not take care of a woman; that he had no house or place to take her to; stating also he could prove he was not the only boy that had anything to do with her, and that he would not marry her." Appellant introduced testimony tending to show that it was his purpose to marry Nora, but was prevented by his parents, who would not give their consent.

No further statement necessary.

*Poindexter & Padelford* filed an able brief and argument for appellant, which is too voluminous to be reported in full. The following taken from the argument supplementing their brief is upon the principal points submitted in the brief.

The object of the statute, Penal Code, article 967, is not to punish illicit intercourse, but to punish the seducer who, by means of a promise of marriage destroys the chastity of an unmarried female under the age of twenty-five years of previous chaste character, and who thus draws her aside from the path of virtue and rectitude and then fails and refuses to fulfill his promise.

Our statute explicitly provides that if any offense has been committed, it is obliterated by the marriage of the parties; or by an offer to marry on the part of the defendant, which offer is made in good faith. Our statute, taken as a whole, does not punish illicit intercourse obtained upon the promise of marriage, unless that promise is broken and is unfulfilled by reason of the fault of the defendant. It is the broken promise which the law will regard as the gravamen of the offense. It must, therefore, be held that where seduction is accomplished under the promise of marriage, and this promise has been kept, or if the defendant in good faith offers to keep this promise, no prosecution can be allowed or conviction had.

Under the statutes of Oregon, Pennsylvania, Michigan, and Kentucky, it is in effect provided that if any person under promise of marriage shall seduce and have illicit intercourse with any unmarried female of previous chaste character, such person upon conviction shall be punished, etc. It is also provided that a subsequent marriage of the parties is a defense to the violation of this section; or, that upon a subsequent marriage of the parties prior to the finding of an indictment or prior to conviction shall be a bar to the prosecution, or as provided by statute, shall obliterate the offense.

We shall call your honor's special attention to the case of the State v.

Adams, 42 Am. St. Rep., 790; People v. Gould, 70 Mich. Rep., 245, and the case of Commonwealth v. Ichar, a Pennsylvania decision which is quoted in the Michigan case. This Pennsylvania case uses the following language: "It is not the carnal connection, even when induced by the solicitation of the man, that is the object of the statutory penalty; but it is the seduction under promise of marriage which is an offense of so grievous a nature as to require this exemplary punishment. What promise? One that is kept and performed? Clearly not; but a false promise, broken and violated after performing its fiendish purpose. The evil which led to the enactment was not that females were seduced and then made the wives of the seducers; but that after the ends of the seducer were accomplished, his victim was abandond to her disgrace."

In Commonwealth v. Wright, 27 S. W. Rep., 816, the Court of Appeals of Kentucky, in construing a somewhat similar statute, uses the following language: "Its primary object is to compel the seducer to marry his victim so that she be not further degraded and perhaps lost through her shame, but rather, that she be saved by wifehood, and that the issue, if any, born or to be born of the illicit intercourse be made legitimate instead of being bastardized. It seeks to provide for the woman and her issue, if any. The marriage of the parties is the purpose, intent, hope, and spirit of the statute; and the court holds wherever the defendant offers in good faith to marry, this is an end of the offense. And exactly the same question was decided and the same construction was placed upon our statute in the case of Wright v. State, 31 Texas Criminal Reports, 354, and no other construction can be placed upon this statute. It gives to the defendant the privilege and the right to obliterate and do away with any offense by (1) marrying the female before conviction, or (2) by making a bona fide offer of marriage to her; and our court, together with these other courts, holds that if the defendant is prevented, by any event over which he has no control, from carrying into effect this purpose and object of the statute, then the offense has been obliterated. In this case the evidence shows that the promise of the defendant to marry Nora Livingston was a bona fide promise, and that he always intended to carry that promise into effect, and that he was only prevented from carrying it into effect by two events, over which he had no control whatsoever: 1. The prohibition of his mother; and, (2) the death of Nora Livingston.

The court below should have allowed the testimony on this issue to have been presented to the jury, and should have given the jury proper and legal instructions upon this issue. But the trial court altogether ignored this issue, which we claim under our statute, and under authorities above, was a grave and vital error.

All of the evidence shows that the defendant's promise of marriage was a bona fide promise; and the evidence of the defendant shows that he made a bona fide offer to marry the said Nora Livingston, but was

prevented from carrying into effect this offer by the prohibition of his mother and the death of Nora Livingston.

If Nora Livingston, before she had carnal intercourse with defendant, knew that he was a minor, and knew that his mother would not give her consent to their marriage; that is, if before she had carnal intercourse with defendant she knew that any promise of marriage made by him would not and could not be consummated, it makes no difference what was the impediment, then such a promise could not form the inducement to or the basis of the crime of seduction under our statute.

This issue is clearly raised by the record of this case, and the trial court erred in not permitting the defendant to show that prior to the alleged seduction, he was under twenty-one years of age, and that his mother forbid Nora Livingston keeping his company, all of which was known to Nora Livingston prior to said seduction. This was a very important and potent fact, and if such fact existed, then there could have been no seduction, because the carnal intercourse could not have been based upon a promise of marriage which was known would not be fulfilled.

*Rob't A. John,* Assistant Attorney-General, for the State.—Appellant contends that by reason of his minority he could not make a valid contract of marriage, without the consent of his parents; that before the act of seduction his parents objected to a contract of marriage; that this objection was known to the prosecutrix; that subsequent to seduction, although appellant in good faith desired to consummate the promise of marriage, he could not do so, because of the violent and positive objections of his parents.

Appellant insists that after the act of seduction, he in good faith intended to marry deceased; but the intervention of the death of prosecutrix (a cause beyond his control) prevented him from making the tender in good faith; and that therefore he is entitled to an acquittal.

In appellant's brief he cites numerous authorities, which he contends sustain his proposition. Among them he cites the line of decisions to the effect: If the seducer were a married man, and his marriage was known to his victim, he could not be prosecuted upon the promise of marriage for the seduction of the victim. This is good law, because a promise to marry made by a married man is absolutely void ipso facto; and when knowledge of the married condition of the seducer is brought home to his victim, it of itself destroys the very idea of seduction; that is, the defilement of a female upon the promise to marry, because under those circumstances there is absolutely no promise. A promise of marriage, however, made by a minor is not void. It runs contrary to no statute, and a marriage consummated in pursuance of said promise, while under certain circumstances may be deemed voidable, is not of itself in violation of any penal statute. The State therefore submits that the cases cited by appellant are not in point, and submits sharply the

proposition that, in a prosecution for seduction, the validity of the promise to marry, as tested by the minority of the defendant, is not an issue in the case. The same has been clearly decided by our court. Harvey v. State, 53 S. W. Rep., 102; McCuller v. State, 36 Texas Crim. Rep., 212; Kenyon v. State, 26 N. Y. Rep., 203; 2 Whart Crim. Law, sec. 1759; Polk v. State, 40 Ark., 482; Crozier v. State, 1 Parker Crim. Rep., 453.

As to the second contention of appellant, the State submits that the intervention of the death of the prosecutrix subsequent to the admitted demand made by her father upon appellant that he should marry his daughter, together with the fact that it was then declined both by appellant and his parents, has estopped this appellant from claiming it was his intention in good faith to tender marriage subsequently, and that he was only prevented in doing so by the death of him victim. The State has been unable to find an exact precedent upon this proposition, but invokes our statute on seduction as excluding the contention of appellant. Article 969, Penal Code, recites: "If the parties marry each other at any time before the conviction of defendant, or if defendant in good faith offered to marry the female so seduced, no prosecution shall take place; or if begun, it shall be dismissed." There are therefore two methods by which a guilty defendant may avoid punishment for this crime, but it is only in the sense of avoiding the same. The crime itself is complete and the State certainly does not carry the burden of showing that the conditions avoiding the punishment have not arisen in order to maintain a conviction. The two methods are,—first, by marriage. Of course, appellant can not invoke that, his victim having died. And the second is equally specific; it states if he make a bona fide offer to marry, he may avoid the consequences. The burden is upon him, it being the proviso or exception, and he must affirmatively show before he can avail himself of this exception, not that he intended to,—not that it was his purpose to, but that as a matter of fact he did make a bona fide proffer to marry the female seduced. If he waits until too late he has forfeited his right—he delays at his own peril. His declination when the demand was made by the father, and the subsequent death of his victim, has certainly closed the portals of his escape by reason of this statute. As a general rule, it is clear that, where a defendant, who is guilty under the general terms of the law, seeks to avoid the consequences of his guilt by reason of a proviso or exception which peculiarly applies to himself personally or to the circumstances of his particular case, that the burden is upon him to affirmatively show that he comes within such proviso. Blair v. State, 26 Texas Crim. App., 387; Skeen v. State, 34 Texas Crim. Rep., 308.

HENDERSON, JUDGE.—Appellant was convicted of seduction, and his punishment assessed at confinement in the penitentiary for a term of two years, and he prosecutes this appeal.

There are a number of assignments. However, we will only consider such as we deem important.

The court gave the following instruction to the jury: "You are further instructed that the fact that defendant was under twenty-one years of age, and the fact that his mother may have refused to allow him to marry the said Nora Livingston, is no defense in this case." Appellant excepted to this charge, and insists that, in view of the evidence, the court should have given the converse of the proposition contained in said charge. This question has already been decided by this court adversely to appellant's contention. Harvey v. State, 53 S. W. Rep., 102.

Appellant, however, urgently insists that inasmuch as appellant offered to marry prosecutrix, and after showing he was under twenty-one years of age and that his mother refused to give her consent to the marriage, that his offer to marry her was made in good faith, and under the statute it would relieve him of the prosecution. The language of article 969, Penal Code, is as follows: "If the parties marry each other at any time before the conviction of the defendant, or if defendant in good faith offer to marry the female so seduced prior to the time he pleads to the indictment, no prosecution shall take place, or if begun it shall be dismissed." It will be seen that the statute with reference to seduction makes the offense complete when carnal knowledge of the female is procured by virtue of a promise to marry, and the subsequent article simply authorizes a dismissal of the case under certain contingencies. These contingencies are the marriage of the parties, or an offer made on the part of the seducer in good faith to marry the prosecutrix. We take it that "good faith" here means ability to consummate the marriage. The law requires a promise to marry to be made in good faith, and takes no note of appellant's inability to consummate the marriage. As far as the crime is concerned, it is already committed, and appellant can only escape punishment for his crime by complying with the statute that authorizes a dismissal of the prosecution. Any other construction would lend the sanction of the law to a seducer who was under minority to ply his seductive arts, and thus encompass the ruin of his victim, and afterwards depend on the interference of his parents to prevent the enforcement thereof. Polk v. State, 40 Ark., 482.

In this same connection appellant also insists that, under the proof, he should have had a charge that the death of the prosecutrix relieved him of the prosecution, or, at least, that this issue should have been submitted to the jury, inasmuch as he introduced testimony tending to show that he was not to marry the prosecutrix until he was twenty-one years of age, by the terms of the agreement, which was some year or two off, and that the prosecutrix died on March 18, 1899, long before the time elapsed at which he was to marry her. We do not understand the statute to bear any such construction as is contended by appellant. The statute says: "If the parties marry each other at

any time before the conviction of defendant, that he will be relieved of the prosecution." Now, the testimony shows here, beyond any controversy, that when the prosecutrix was found to be enceinte prosecutrix's father approached defendant in order to induce him to marry his daughter. Appellant at the time failed to offer in good faith to marry prosecutrix, but referred the matter to his mother, who refused to grant her consent, and we understand appellant relies on this want of consent of his mother as a bar against this prosecution; that is, he absolutely refused to marry her, after being informed by her father of her condition. This was before her death, and at a time when he might have married her. And we hold that, notwithstanding there may have been an agreement to marry at some future time, and not at that particular time, under the terms of the statute, to relieve himself of prosecution, it was at least his duty then to offer in good faith to marry the prosecutrix. In failing to do so, the statute no longer afforded him a shield, not to wipe out the offense, for that was already committed, but to bar a prosecution for said offense.

Appellant complains of the failure of the court to sufficiently define to the jury in his charge the term "seduction," and in that connection contends that the ocurt erred in refusing to give certain special instructions requested by him. We do not find in the court's charge any attempt to define the term "seduction." In the third and fourth paragraphs of the charge, the court applied the law to the facts of the case. These charges are as follows: "(3) Now, if you believe from the evidence beyond a reasonable doubt that defendant, in the county of Johnson, and State of Texas, about the time alleged in the indictment, by a promise to marry said Nora Livingston, did then and there have carnal intercourse with her, and that she yielded to his wishes in that respect because of the promise on his part, if any, to marry her, and by reason of said promise he secured her to yield her person to his carnal desires, then you are instructed that you will find him guilty as charged, and you will assess his punishment at confinement in the penitentiary for not less than two nor more than five years, or by fine not exceeding five thousand dollars, and so say by your verdict. (4) But, on the other hand, if you believe he had carnal knowledge of her, and that the same was not secured by him upon the promise of marriage to her, but that she yielded her person to his carnal embraces simply from her own will, and not because of any promise to marry, then you will find him not guilty, and so state, or if you believe that she had had intercourse with some person before she copulated with defendant you will acquit him." Appellant in this connection cites Putnam v. State, 9 Texas Criminal Appeals, 454, and Cole v. State, 40 Texas, 147. The charge of the court in Putnam's case is very much like the charge in the present case. The court in this opinion thoroughly discussed the meaning of the term "seduction," citing various authors, and reversed the case because of the insufficiency of the charge. It occurs to us, in view of the facts in this case, that the court should have given a charge defining the

meaning of the term "seduction," inasmuch as it was made an issue in the case as to whether appellant plied the arts and wiles of the seducer, gained the affections of the prosecutrix, and then drew her aside from the path of virtue which she was pursuing, and corrupted and deceived her, and thereby induced her to sacrifice her virtue to him under the promise of marriage. Usually the injured female testifies, and details the circumstances of her betrayal, showing how her affections were entwined, the circumstances of her betrothal, and how she was deceived and led to her ruin. In this case the alleged injured female did not testify, as she died before the trial, and we are thus left to gather from circumstances the facts attending the prosecution. The mother and stepfather of the prosecutrix knew of her betrothal simply from the fact that appellant is shown to have asked their permission to marry prosecutrix. Casey's and Drake's evidence both relate to confessions of appellant that tend to show he was trifling with the affections of prosecutrix. On the other hand, Mrs. Jones (mother of appellant) testifies to facts that tend to show prosecutrix was not a chaste woman. Defendant's own evidence tends to show that prosecutrix surrendered her virtue to him without any promise of marriage, and that she was not a maiden when he first had carnal knowledge of her, and there is testimony of others tending to reflect on the character of the prosecutrix. Now, with all this testimony before the jury pro and con, raising the issue as to whether or not the prosecutrix was actually seduced,—that is, led astray from the paths of virtue by appellant under the promise of marriage,—we think the court should have fully instructed the jury as to the meaning of the term "seduction."

Appellant also insists that the court should have given his special requested instruction to the effect that the sexual intercourse must not be under a promise to marry in the future, but immediately. We think this instruction was properly refused. Bailey v. State, 36 Texas Crim. Rep., 540.

We do not deem it necessary to discuss other questions raised by the assignments, but, because of the failure and refusal of the court to give a sufficient definition of the term "seduction" in the charge, the judgment is reversed and the cause remanded.

*Reversed and remanded.*