### HENRY LEE v. THE STATE.

No. 4010.    Decided October 21, 1908.

**1.—Murder—Jury and Jury Law—Special Venire—Jury Wheel—Clerk.**

Upon trial for murder there was no error in the court's action in having the jury list drawn from the wheel by the district clerk, under the Act of the Thirtieth Legislature page 269; and the contention of defendant that the term clerk in said act did not include or mean the clerk of the district court is untenable.

**2.—Same—Charge of Court—Manslaughter—Adequate Cause—Assault and Battery causing Pain.**

Where upon trial for murder the defendant testified that, just before he shot deceased, the deceased hit him in the breast and knocked him down and that the blow hurt for two days, etc., a charge of the court which failed to instruct the jury on the issue of manslaughter that an assault and battery causing pain was adequate cause, and which instructed the jury that an assault and battery so slight as to show no intention to inflict pain or injury is not adequate cause, was reversible error; and this although appellant's contention as to the circumstances of the shooting rested upon a very insubstantial basis of fact.    Following Warthan v. State, 55 S. W. Rep., 55.

Appeal from the Criminal District Court of Harris.    Tried below before the Hon. J. K. P. Gillaspie.

Appeal from a conviction of murder in the second degree; penalty, twenty years imprisonment in the penitentiary.

The opinion states the case.

*E. T. Branch* and *S. B. Ehrenwerth,* for appellant.—On question of charge on manslaughter: Cooper v. State, 48 Texas Crim. Rep., 36; 12 Texas Ct. Rep., 620; Ware v. State, 92 S. W. Rep., 1095; Scott v. State, 93 S. W. Rep., 113; Renow v. State, 92 S. W. Rep., 803; Griffin v. State, 50 S. W. Rep., 366; Williams v. State, 25 Texas Crim. App., 216; Wadlington v. State, 19 Texas Crim. App., 266; Keith v. State, 94 S. W. Rep., 1046; Neyland v. State, 13 Texas Crim. App., 538.

*F. J. McCord,* Assistant Attorney-General, for the State.—On court's charge on manslaughter: Williams v. State, 7 Texas Crim. App., 396; Wadlington v. State, 19 Texas Crim. App., 266; Meuly v. State, 26 Texas Crim. App., 274; Chatman v. State, 55 S. W. Rep., 346.

RAMSEY, JUDGE.—Appellant was indicted in the Criminal District Court of Harris County, charged with the murder of one

James S. Simpson. He was tried therein on the 29th day of April and was convicted of murder in the second degree and his punishment assessed at twenty years confinement in the penitentiary.

Many of the questions raised on the appeal have been decided adversely to the contention of appellant. He raises, among other questions, the validity of what is known as the jury wheel law. This question has been decided against appellant in the case of Smith v. State, yet unreported, and need not be further discussed. In the same connection appellant contends that the special venire in this case was improperly drawn in that same was drawn by the district clerk of Harris County and not by the clerk of the Criminal District Court of said county. We do not believe that this contention can be maintained. Section 3 of the Act of the Thirtieth Legislature, p. 269, provides that after the cards containing the names of jurors shall be deposited in the wheel same shall be kept locked at all times, except when in use as hereinafter provided, and that the keys to such locks shall be kept, one by the sheriff and the other by the district clerk. It is provided by section 4 of said Act that not less than ten days prior to the first day of the court, the clerk of the district court, or one of his deputies, and the sheriff, or one of. his deputies, in the presence and under the direction of the district judge if the jurors are to be drawn for the district court, shall draw from the wheel containing the names of jurors, after the same has been well turned so that the cards therein are thoroughly mixed, one by one the names of thirty-six jurors, or a greater or less number where such judge has so directed for each week of the term of the district court. By section 9 of said Act is provided that whenever a special venire is ordered the clerk or his deputy, in the presence and under the direction of the judge, shall draw from the wheel containing the names of jurors the number of names required for such special venire. Attention is called to the fact that the law does not provide that the "district clerk" but that the "clerk" shall draw the names from the wheel, and the contention is made that this general designation "clerk" was so used that it might include the criminal district clerk and it does not mean the clerk of the district court, or the clerk of a district court having no criminal jurisdiction. but that the intent of the entire Act is that the clerk of the court in which the lists are to be used shall draw the names. We think in view of the entire statute, and particularly with reference to section 3, which provides that one of the keys shall be kept by the district clerk and the other by the sheriff and the sections of the Act in question where the general word "clerk" is used in respect to their duties concerning jurors, that it was not the intention of the Legislature that any special significance should be attached in section 9 of the Act in question, to the fact that the word "clerk" and not "district" clerk is used therein. It will be noted, too, that

when a special venire is drawn it is made the duty of the clerk to prepare a list of such names in the order in which they are drawn from the wheel, and attach such list to the writ and deliver the same to the sheriff, and the cards containing such names shall be sealed up in an envelope and shall be retained by the clerk for distribution, as herein provided. So that we believe the court below took the proper view of this matter and was clearly right in having the list drawn by the district clerk of Harris County.

The facts of the case show that appellant shot and killed James S. Simpson in a saloon in Houston very early in the morning. The proof shows that the parties, with others, had been up all night and were all drinking and that Simpson was in an advanced state of intoxication. Appellant, deceased, one Chumley and a young man named Hayne all came into George Voss' saloon about 5 o'clock on the morning of March 4, 1908. Hayne left some half hour or more before the killing, the others remained. Practically all the testimony except that of appellant is to the effect that deceased voluntarily gave up his pistol and belt to the witness Frank Casey and the same was placed behind the bar. The conversation between the parties took a pretty wide range and just before the killing, Simpson said to Chumley, "go away and leave me alone" and pushed him back and he fell on the floor. At this time, according to the testimony of Casey and most of the witnesses, appellant was standing by the counter some six or seven feet from Simpson, and thereupon appellant pulled his pistol and fired three shots at Simpson; that at the time, Simpson was not doing anything. When the first shot was fired, Casey testifies, Simpson made one step towards the door and was facing appellant; that at the second shot deceased fell with his head under the swinging doors. At the first shot he had his hands over his stomach— clasped in front of him over his stomach, and after appellant commenced shooting, deceased kept his hands in the same position; that he fell after the second shot; that he fell with his head underneath the screen door. That after deceased fell, appellant made one step towards deceased's feet and fired the third shot, when deceased was lying on his back on the floor with his head under the screen door. The witness Casey gives a very full and circumstantial detail of all the facts of the killing. His testimony makes a very strong case against appellant and it is corroborated, to a large extent, by the testimony of all the other witnesses, except appellant, as well as the physical facts testified to on the trial. There is, however, some contradiction between the testimony of Casey and other witnesses concerning the killing which we do not deem it necessary to set out. Appellant testified in his own behalf and the following is a brief summary of his testimony as it relates to the particular facts of the killing: He says in the first place, and this seems to be conceded, that he and deceased

were very friendly, both of them being policemen in Houston. He testifies that after they had taken the last drink at Voss' saloon Simpson seemed to be in a bad humor; that when Chumley went up to him and spoke to him, he knocked him back against the wall and he fell; and that after he did that, that he, appellant, walked up to him and said, "Jim, don't do that;" that Simpson then hit him in the breast and knocked him down; that the blow hurt for two days; that after he fell Simpson came towards him with his hands going back under his coat and said, "God damn you son-of-a-bitch, I will kill you," and that as he, appellant, was getting up from the floor he pulled his gun and fired three shots at Simpson. Appellant also testifies that when Simpson knocked him down it made his watch fall out of his pocket; that he shot Simpson because he believed he was going to kill him and that he would not have shot Simpson if he had known he was unarmed. He denies shooting Simpson while he was lying on the floor. He says the effect of the shots was that the room was full of smoke; that when he fired the shots Simpson was right in front of him; that all the shots were fired close together; that when he fired the shots, Simpson had stepped up and thrown his hands behind him; that he pulled his gun and fired as he was getting up from the floor where he had just been knocked down by Simpson; that he fired no more shots after he saw Simpson had fallen; that he had other loads in his gun and there was nothing to prevent him from shooting him again.

This testimony is sufficient to demand and require a charge on the subject of manslaughter as well as self-defense. Article 702 of the Penal Code is as follows: "The following are deemed adequate causes: 1. An assault and battery by the deceased, causing pain or bloodshed." Construing this statute it has been held that to constitute this ground of adequate cause, it is not required that both pain and bloodshed should be caused by the assault and battery. Foster v. State, 8 Texas Crim. App., 248; Tickle v. State, 6 Texas Crim. App., 623; Hill v. State 8 Texas Crim. App., 142; Bonnard v. State, 25 Texas Crim. App., 173; Childers v. State, 33 Texas Crim. Rep., 509; Williams v. State, 15 Texas Crim. App., 617; High v. State, 26 Texas Crim. App., 545, and Spivey v. State, 30 Texas Crim. App., 343.

On the subject of manslaughter the court gave the following instructions: "Manslaughter is voluntary homicide, committed under the influence of sudden passion, arising from an adequate cause, but neither excused or justified by law. By the expression 'under the influence of sudden passion,' is meant: (1) The provocation must arise at the time of the commission of the offense, and the passion is not the result of a former provocation. (2) The act must be directly caused by the passion arising out of the provocation,

and not a provocation given by some other person than the party killed. (3) The passion intended is either of the emotions of the mind known as anger, rage, sudden resentment or terror, rendering the mind incapable of cool reflection, whether accompanied by bodily pain or not is adequate cause, in law.

"And when there are several causes to arouse passion, although no one of them alone would constitute adequate cause, it is for you to determine whether or not all such causes combined might be sufficient to do so. Insulting words and gestures, or an assault and battery so slight as to show no intention to inflict pain or injury, are not adequate causes.

"In order to reduce a voluntary homicide to the grade of manslaughter, it is necessary not only that adequate cause existed to produce the state of mind referred to; that is, anger, rage, sudden resentment or terror, sufficient to render the mind incapable of cool reflection, but that, also, such state of mind did actually exist at the time of the commission of the offense.

"Although the law provides that the provocation causing the sudden passion must arise at the time of the killing, it is your duty, in determining the adequacy of the provocation, if any, to consider in connection therewith, all the facts and circumstances in evidence in the case, and if you find by reason thereof, the defendant's mind was incapable of cool reflection, and that said facts and circumstances were sufficient to produce such state of mind in a person of ordinary temper, then the proof of sufficiency of the provocation satisfies the requirements of the law, and so in this case you will consider all the facts and circumstances in evidence, the threats, if any, an assault, if any, the past conduct and bearing of said James S. Simpson towards the defendant, and all the facts and circumstances transpiring before, at the time of, and after the homicide, in determining the condition of the defendant's mind, at the time of the alleged killing, and the adequacy of the cause, if any, producing such condition.

"If you believe from the evidence beyond a reasonable doubt, that the defendant, Henry Lee, with a pistol, a deadly weapon that is, as used was calculated reasonably and probably to kill, in a sudden transport of passion, aroused by adequate cause, as the same is herein explained, and not in his own self-defense and against an unlawful attack, or threatened assault, reasonably producing a rational fear or expectation of death or serious bodily injury, did shoot and kill James S. Simpson, in Harris County, Texas, on or about the fourth day of March, A. D. 1908, then find him, the defendant, guilty of manslaughter and assess his punishment by confinement in the State penitentiary for not less than two nor more than five years." It will be noticed from a careful reading of this charge that nowhere were the jury in terms instructed that an assault and battery causing pain was adequate cause. The

failure of the court so to charge and the injury resulting there-
from was increased, as we believe, by the following portion of the
charge on manslaughter:

"Insulting words, and gestures, or an assault and battery so slight
as to show no intention to inflict pain or injury, are not adequate
causes." The case is very much like that of Warthan v. State, 55
S. W. Rep., 55. In that case it seems the court gave a charge to the
jury on manslaughter which after containing certain statutory pro-
visions in reference to passion and adequate cause instructed the
jury substantially that the provocation must arise at the time of
the commission of the offense, and that any circumstances or con-
ditions which would arouse passion in the mind of a man of ordi-
nary temper, sufficient to render a person incapable of cool reflec-
tion, would be adequate cause, and that the jury could look not
only to the provocation at the time, but to all the facts and cir-
cumstances surrounding the parties which might have a bearing on
the provocation at the time. In that case as in the case at bar,
it was the contention of appellant that the only evidence requiring
a charge on manslaughter consisted in the testimony of the de-
fendant himself, and in that case another witness, who had stated
that just prior to the shooting, deceased, who had been ordered
to get out of the house, advanced towards defendant and struck
him a blow in the breast, and that the court, on this testimony,
should have pertinently instructed the jury that, if they believed
from the testimony that deceased, prior to the shooting, struck de-
fendant a blow which caused him pain, and if they believed his
passion was thereby excited and he was rendered incapable of cool
reflection, and under such circumstances slew deceased, then to
find him guilty of manslaughter. Passing on the question there
raised, Judge Henderson, speaking for the court, says: "We under-
stand it to be the duty of the court, in charging the jury, to instruct
them upon the very phase of the case suggested by the testimony.
The only issue presented by the evidence requiring a charge on
manslaughter was the provocation which arose at the very time of
the homicide. This provocation was the blow, which according to
the testimony of defendant and another witness, deceased struck
him when he commanded him to cease the disturbance and leave his
premises. Our statute makes a blow, under certain conditions,
adequate cause to reduce a homicide to manslaughter. The blow
must cause pain, and must also engender passion which renders the
mind incapable of cool reflection. Now, while it is true that the
charge of the court was comprehensive enough to include the ade-
quate cause here presented, was it sufficiently pointed to direct the
attention of the jury to the very act of the deceased on which ap-
pellant predicated his defense of manslaughter? We think not.
If the jury had been told that, as a matter of law, a blow which
caused pain was adequate cause, this obstacle would have been

removed from their pathway; and then it would have only been necessary for them to find that the blow was struck, and that it caused pain which rendered the mind of defendant incapable of cool reflection. As it was, they were left, without any suggestion from the court to determine the matter of law in the first instance." As we have seen, the charge of the court in the case at bar is subject to all the objections pointed out in the case which we have just quoted from, and the failure of the court in this case to charge that an assault and battery causing pain was adequate cause, was intensified by the instruction that an assault and battery so slight as to show no *intention* to inflict pain or injury is not adequate cause. The testimony of the State in this case is very strong. The circumstances all indicate to our mind, if we were the arbiters of matters of fact, that the claim and contention of appellant as to the circumstances of the shooting rests on a very insubstantial basis of fact, but it must be conceded in every case that every appellant is entitled to have the jury charged the law of the land and charged correctly. For us to undertake, where this has not been done, to write a judgment of affirmance is to deny him the right of trial by jury and to make ourselves what the law of the land never contemplated we should be, the arbiters of matters of fact. The charge of the court is erroneous. These errors were called to attention in a motion for a new trial. This should have been granted. Not having been done, we have no discretion but to reverse the same and remand it for a trial in accordance with law, which is here done.

*Reversed and remanded.*