## Willie Muhlhause v. The State.

### No. 4159. Decided May 26, 1909.

**Seduction—Charge of Court—Conditional Promise.**

Where upon trial for seduction the evidence suggested not only a conditional
promise of marriage but one based upon lust, etc., and the court's charge
was very general in its terms, the court should have submitted special requested
charges on this phase of the evidence.

Appeal from the District Court of Coryell.    Tried below before
the Hon. John D. Robinson.

Appeal from a conviction of seduction; penalty, two years con-
finement in the penitentiary.

The opinion states the case.

*J. W. Stinnett,* for appellant.—On question of special charges re-
fused:    Cited cases in the opinion.

*F. J. McCord,* Assistant Attorney-General, and *S. P. Sadle,* for the
State.

DAVIDSON, Presiding Judge.—Appellant was convicted of seduc-
tion, his punishment being assessed at two years confinement in the
penitentiary.

The facts disclose that the prosecutrix, Louise Gaskamp, was
twenty-three years of age in 1907.    Appellant was something like
six years her junior.    Under her testimony she and appellant became
engaged sometime prior to the time she testifies to the first act of
sexual intercourse between them, which occurred in September, 1906.
That after this engagement he continued going with her both before
and subsequent to the act of intercourse.    She says he went with
her several times to parties, but she failed to give the dates.    That
her recollection is that a party occurred at Kittler's, in September,
1906.    When this party broke up other boys were going off with
girls and the defendant was standing out on the front porch and she
walked out by him and he went on home with her.    That it was a
little over a half mile from the party to where she lived.    They were
walking.    She says if that was in 1907 she was twenty-three years
old.    On cross-examination by appellant she identified the card and
letter that she had written appellant, and stated that these docu-
ments were written after she had seen the doctor.    This interview
with the doctor was with reference to her then pregnant condition.

Several questions were asked her by appellant's counsel, all of which she refused or failed to answer. The substance of these questions are that if it was not a fact she did not want to prosecute appellant, and that the reason for it was she knew they were not engaged, and that she had been instructed to testify to the engagement for the purpose of convicting appellant, and if it was not a fact that she knew they were not engaged, and if it was not a fact that appellant did not promise to marry her, but that after she found out her condition that she went to him in order to induce him to marry her in order to cover up her shame. She was then asked why she did not want to answer these questions. The record shows that they were not answered by her and she failed to tell the reason why she did not want to answer them. In regard to the first act of intercourse, the record substantially, in regard to her statement of it, is that she did not remember all that was said between them when they left the party, but that it was not a fact that after they got two thirds of the way home she told the defendant to "Let's stop." She admitted having intercourse with him that night after they reached home in the yard. She was asked then if when they reached a point about two thirds of the way home if she did not stop and say to defendant, "Let's stop," and threw her arms about him and pulled him up to her and he then had sexual intercourse with her. She replied not in the road but in the yard. She further stated that she did not say anything and did not remember that appellant said anything. That this was the first time he had ever had intercourse with her. She was then asked about having intercourse at a subsequent date out in the barn at her father's home, which she admitted. She says she went there at the request of appellant, and while there she had intercourse with him again. That both instances above mentioned they were standing up when intercourse was had. She states that she did not put her hands on appellant first, but that he put his hands on her first. That she had told him before that she did not want to do that way before they married. That she was afraid of him but he did it anyway. She was asked if it was not a fact that in addition to the fear that she stated she had, that she yielded to him partly on account of her being a stout healthy woman and enjoyed it and partly through lust. Her answer was, "I never did say anything to him, but he always started it." The further question was asked her, "When he started to talking to you about it did you feel like doing that because you felt like it or because you enjoyed it? A. He always promised me everything. It did not pain me. I never did follow him to the lot. I do not remember the last time he did have intercourse with me. I did not call him by our house and have a talk with him. I had been over to Mr. Mulhause's and he stopped and spoke to me. Didn't you tell Willie Muhlhause the reason you wanted him to marry you was so nobody would know,

what happened? A. Yes, he had told me that we would do that and nobody would know it. Q. In that same conversation there in the road didn't you tell him that the reason you wanted him to marry you was because you were in this condition, and if he would marry you nobody would ever find it out? A. Yes, I told him that; he had promised me that was the way it should be. Q. Did he promise you that if you got in a family way that he would marry you? A. He always promised to marry me. Q. Did he promise to marry you if you got with child? A. He had promised me, knowing that I was in that condition. Q. Was that the first time he had ever promised you, knowing that you were in that condition? A. He had spoken of it before in a way that I suppose he knew it. Q. When was the first time you and Willie spoke about if you got in a family way that he would marry you? A. The best I remember was in the yard the first time we spoke about it." Speaking further of this matter she says, in reply to this question: "He had only promised you in case you got in a family way? A. I had just then found it out. That is the reason I went to see him about marrying me, because I was in that condition. Willie had told me that he would marry me before we came back from the party to Kettler's and had this act of intercourse there in the yard. I do not know when he had told me this, but it was half a year before. There was a party at Mr. Muhlhause's, and we were going back from the party, and he told me that he would marry me. That was about half a year before the party at Kettler's, I think. He just asked me if I would marry him and I told him, 'Yes.' This was the first time we ever talked about marrying." Her testimony further shows that at the time of the intercourse on the night of their return from Kettler's they said nothing to each other. That they simply had intercourse standing up. That neither one of them said anything. She says about the same in regard to the next act of intercourse had between them at the barn, and in both instances they were standing up. They embraced each other, but said nothing, on each occasion. The testimony is rather rambling, and not coherently stated in the record, but it may be fairly well deduced from her testimony that some six months before the first act of intercourse appellant had asked her to marry him and she had agreed to it. That on the night of their first act there was nothing said about marrying, and, in fact, nothing said at all in regard to the matter. Appellant's testimony denies absolutely that he was engaged to the girl, or was ever under any contract of marriage. He testifies practically as she does about the acts of intercourse, but states that when on their way home that night from the party he raised up the wire, which was part of the fence, she passed through and he followed. That when getting through she remarked to him, "Let's stop," and threw her arms around him, and drew him up to her, and that he then understood what it meant, and accommodated her in that condition while they were standing up.

There was nothing said about marrying. This is a sufficient statement of the case to review the questions suggested for reversal.

Under this testimony, we are of opinion that the special charges requested by appellant should have been given, and that the charges given by the court were not sufficient. The court gave this charge: "If you find from the evidence that the defendant had carnal intercourse with the prosecutrix, Louise Gaskamp, but you further find that the said Louise Gaskamp yielded to such carnal intercourse and thereby surrendered her chastity through fear of the defendant, or for any other reason than by means of a promise of marriage previously made to her by the defendant, or if you have a reasonable doubt thereof, you will acquit the defendant." Exception was reserved to this, and the following two charges requested, which were refused: "You are further charged, at the request of the defendant, that if you believe from the evidence that the defendant promised to marry Louise Gaskamp, but that the promise was a conditional promise, or was made on condition that if she got in family way, and that she surrendered, and had sexual intercourse with the defendant by reason of such conditional promise, then you are instructed, if you so find, to acquit the defendant.

"You are further charged, at the request of the defendant, if you believe from the evidence, beyond a reasonable doubt, that the prosecuting witness, Louise Gaskamp, did not rely solely upon the absolute promise of marriage, but that she was moved to let defendant have the alleged sexual intercourse with her through fear, or partly through fear or partly through lust, then it is your duty to acquit the defendant, although you should believe that a promise of marriage was then made, and was part, though not the sole and only reason of inducement." These matters are all properly presented for revision. If the prosecutrix's evidence sets forth the State's case, then the issue of a conditional promise of marriage is part of the case; at least, this issue is raised by her testimony. Wherever the evidence raises an issue it is the duty of the court to charge upon it. As was said in the case of Lee v. State, 54 Texas Crim. Rep., 382; 113 S. W. Rep., 301: "The circumstances all indicate to our mind, if we were the arbiters of matters of fact, that the claim and contention of appellant as to the circumstances of the shooting rests on a very insubstantial basis of fact, but it must be conceded in every case that every appellant is entitled to have the jury charged the law of the land, and charged correctly. For us to undertake, where this has not been done, to write a judgment of affirmance, is to deny him the right of trial by jury, and to make ourselves what the law of the land never contemplated we should be— the arbiters of matters of fact. The charge of the court is erroneous." It will be noted that the court's charge is very general, and to the effect that the girl yielded to such carnal intercourse, and thereby surrendered her chastity through fear of defendant, "or if any other reason than by means of a promise of marriage previously made to her by defendant," they should acquit. The testimony suggests there was a

conditional promise of marriage, and that conditional promise was based upon the fact of her becoming pregnant by reason of her intercourse. This suggests not only a conditional promise of marriage, but one based upon lust, and as said in the case of Putman v. State, 29 Texas Crim. App., 454, "It smacks of barter and trade." It will be noticed that the quotation from the court's charge did not justify or authorize the jury to acquit if there had been any promise of marriage at all, for the language is "for any other reason than by means of a promise of marriage previously made to her by the defendant." Some of her evidence makes the promise of marriage, but makes it conditional upon pregnancy. The jury might believe the conditional promise based upon pregnancy under this charge, and yet convict. This was clearly not the law, and in violation of the statute and all the decisions construing that statute. See Barnes v. State, 37 Texas Crim. Rep., 320; Mrous v. State, 31 Texas Crim. Rep., 597; Simmons v. State, 54 Texas Crim. Rep., 619; 114 S. W. Rep., 841; Bailey v. State, 36 Texas Crim. Rep., 540; Snodgrass v. State, 31 S. W. Rep., 366; McCullar v. State, 36 Texas Crim. Rep., 213; Merrell v. State, 42 Texas Crim. Rep., 19; Gorzell v. State, 43 Texas Crim. Rep., 82; Norton v. State, 72 Miss., 128. And in this connection one other fact should be stated, which has heretofore been omitted. Appellant testified that the girl told him that she had been having intercourse with other men, and begun when she was sixteen years of age, and the conversation between them that led up to this was induced by reason of the fact that appellant found no trouble in making the entry of her private parts the first time he had intercourse with her, and also her statement by herself, in testifying that it gave her no pain when appellant had intercourse with her. For a discussion of this condition of facts as bearing upon the issue in hand, see Barnes v. State, *supra*.

The charge given by the court was too general, especially in view of the fact of appellant's requested instructions specifically pointing out the matters upon which he relied. If the prosecutrix had been having intercourse with other men at the time appellant had intercourse with her, she was not subject to seduction. If she entered into a contract with appellant to have intercourse with him on condition that he would marry her if she became pregnant, this did not bring the case within the statute. Appellant's requested charges brought these matters specifically to the attention of the court, and should have been given. And as fully a serious error is found on the face of the court's charge, in which the jury were so instructed that they might convict, and could convict appellant, although the promise of marriage was conditional upon pregnancy. We are, therefore, of the opinion that the conviction is erroneous, and the judgment should be reversed and the cause remanded, and it is accordingly so ordered.

*Reversed and remanded.*

BROOKS, Judge, absent.