### H. H. CHILDERS v. THE STATE.

*No. 488. Decided June 25.*

1. **Murder of Second Degree and Manslaughter—Distinguishing Characteristics.**—Passion and want of premeditation may characterize both murder of the second degree and manslaughter; the crimes are distinguishable by the causes leading to the homicide—that is, whether the cause be adequate or inadequate. If the cause be inadequate, it is murder of the second degree; if adequate, manslaughter.

2. **Same—Adequate and Inadequate Cause—Passion—Statutory Law.**—The Penal Code, articles 595, 596, clearly defines the test as between adequate and inade-

quate cause. If the cause be such as will be reasonably calculated to arouse the passion of a man of ordinary temper and render him incapable of cool reflection, it is deemed adequate; where not so calculated, it is deemed inadequate.

3. Same—Passion—Premeditation—Presumption of Fact.—Unless such passion exists at the time of the homicide it may be murder of the second degree, though there be adequate cause. If time elapses between the cause and the homicide, the existence of passion is a subject for inquiry; if no time elapses, and there is absence of premeditation or any other motive, then the existence of the passion may be assumed from the homicide itself, as a presumption of fact.

4. Same—Adequate Cause—What May Be.—An assault and battery by deceased, causing pain and bloodshed, is declared by the code to be adequate cause (Penal Code, article 597), but adequate cause is not limited to the grounds stated in the code. It is not necessary that a blow be actually struck, nor is bodily pain absolutely essential to adequate cause, but any circumstance or condition which is capable of creating, and does create, sudden passion, as anger, sudden resentment, or terror, rendering the mind incapable of cool reflection, whether accompanied by bodily pain or not, is adequate cause. Following Williams v. The State, 15 Texas Crim. App., 617.

5. Evidence—Manslaughter.—See facts stated which, in the opinion of the court, show no higher grade of culpable homicide, if any at all, than manslaughter.

APPEAL from the District Court of Kendall. Tried below before Hon. EUGENE ARCHER.

This appeal is from a judgment of conviction for murder of the second degree, wherein the punishment assessed was a term of twelve years' imprisonment in the penitentiary.

This is the third appeal taken in this case. The first appeal will be found reported in 13 Southwestern Reporter, 650. The second appeal will be found in 30 Texas Criminal Appeals, 160. In both cases the conviction was for murder in the second degree. After the reversal of the case on the second appeal, to wit, on the 17th day of April, 1893, defendant's motion for a change of venue was granted, and the venue changed from Bexar to Kendall County, on account of such prejudice existing against him in Bexar County as that he could not reasonably expect a fair and impartial trial in said county. The venue was changed to Kendall, because the court house of Kendall County was the nearest court house to the court house of Bexar County.

A full statement of the facts in the case will be found in 30 Texas Criminal Appeals, 160, and the salient features of the case are so concisely and fully summed up in the opinion of Judge Simkins that a further statement is deemed unnecessary.

*William Aubrey, A. W. Houston,* and *N. O. Green,* for appellant.

*R. L. Henry,* Assistant Attorney-General, for the State.

SIMKINS, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at twelve years.

There is but one question in this case, and that is whether the evidence supports a conviction of murder in the second degree. While passion and want of premeditation may characterize both murder in the second degree and manslaughter, yet they are clearly to be distinguished by the causes leading to the homicide. If the cause is such as will be reasonably calculated to rouse the passion of a man of ordinary temper, and render him incapable of cool reflection, it is deemed an adequate cause; and, where not so calculated, the cause is deemed inadequate. Homicide committed under the influence of passion springing out of the first cause can never be greater than manslaughter. It is not generally a matter of difficulty to determine when the cause is adequate or inadequate. The code has clearly defined the test. Penal Code, arts. 595, 596. The question generally is as to the existence of the passion at the time of the homicide. Unless the passion exists, it may be murder, even though there be an adequate cause. Where time elapses between the happening of the cause and the homicide, the existence of the passion becomes a material subject of inquiry; but where the blow follows quickly on the cause, and there is an absence of premeditation or any other motive, then the existence of the passion may be assumed from the homicide itself as a presumption of fact.

The record shows that the appellant got into an angry altercation with a hackman, Jesse Rudder, about the fare. It seems that a companion of appellant had hired the hack, and that both had been riding about the city that night. Appellant, when asked for the money, requested the hackman to call in the morning. His companion, according to the State's witness, was absent when the hackman demanded pay. He declined to call in the morning and insisted on being paid at once, and left the saloon, where the altercation took place, stating he "would get his money." It was stated in argument, that in San Antonio hack drivers can arrest parties who refuse to pay fare, under an ordinance of that city. Appellant followed him out on the sidewalk, and the parties stood facing each other. Appellant asked the hackman, "How long did you have me?" and the hackman answered, "From 7:30," and that his bill was $4. Appellant replied that he "was a d—n, lying son-of-a-bitch." As soon as the words were spoken, the deceased, who was standing near by, rushed upon appellant, crying, "That is too much for a cripple to take." Childers backed away along the wall, and fired, and killed the deceased. It is shown, that as deceased rushed upon appellant he took hold of the lapels of his own coat, as if to throw it off. Deceased was also a hackman. He was superior in strength to appellant, and had been shortly before pointed out to appellant as a dangerous character, who had been in frequent serious difficulties. It is evident that there was no previous ill will between the parties. It does not appear that they had ever spoken to or personally knew each other. It is not shown that,

at the time of the difficulty, appellant had any reason to apprehend an attack from the deceased. Nor was the appellant about to attack the crippled hackman, Rudder; but it appears without contradiction that the deceased, roused to sudden indignation at what he regarded as an insult to a crippled man, rushed upon appellant with the purpose of beating him. The attack was a surprise to appellant, who, rapidly retreating backward, fired to prevent the onslaught. The State witness Rudder says, when Draper rushed at him, Childers backed away, but was stopped by the wall; then backed sideways, along the wall, seven or eight feet. Here, then, we have a case showing no premeditation, no previous grudge or animosity against deceased, and a homicide to protect his person when the person killed was in the very act of making an unlawful and violent attack. Now, while it may be true that the attack may not have been of such a character as would justify the homicide, that is to say, it may not have been such as would produce a reasonable expectation of death or serious bodily injury (Penal Code, article 574), still its violence and suddenness, and the surrounding circumstances, in our judgment, present an adequate cause. Concede that appellant was wrong in cursing the cripple, Jesse Rudder; he was not therefore bound to submit to be beaten and bruised by an enraged antagonist, his superior in strength, voluntarily interfering in the quarrel, not to protect a weaker man from injury, but to chastise another for insulting him. The code declares that an assault and battery by deceased, causing pain or bloodshed, is an adequate cause (Id., article 597); and there is no question that, had the blow been actually given, it would have been adequate cause, under the words of the code. Adequate cause is not limited to the grounds stated. It is not always necessary that the blow be actually struck; and as was said in Williams' case, 15 Texas Criminal Appeals, 617, bodily pain is not absolutely essential to adequate cause in manslaughter, but any circumstance or condition which is capable of creating, and does create, sudden passion, as anger, sudden resentment, or terror, rendering the mind incapable of cool reflection, whether accompanied by bodily pain or not, is adequate cause. Penal Code, art. 594; Wadlington's case, 19 Texas Crim. App., 274. And in the case at bar the suddenness and fierceness of the attack by such a man as deceased is shown to be, and appellant's hasty retreat to the wall, and then sideways along the wall, in avoiding the attack, strongly suggests not only a want of premeditation and cool reflection, but that the homicide was the result of an effort to protect himself from injury. Garello v. The State, 31 Texas Crim. Rep., 56. The evidence shows that the nature of the attack was such that a bystander in the front door of the hotel, watching the quarrel, when the rush took place, moved backward out of the range and sight of the parties, and not on account of appellant, for his back was towards the witness; and this fact was earnestly

pressed upon our consideration by counsel in oral argument. Again, the testimony for the defense (which seems to be corroborated by the evidence of State's witness Rudder, given in the first trial), shows that in fact the quarrel between appellant and Rudder had been settled for the night, and both parties had turned away from each other, and appellant had started to go into the hotel, when deceased became suddenly angry and excited, and ran upon the defendant, saying, "If you want to fight a man, fight me, you son-of-a-bitch;" that a bystander tried to stop him, warning him appellant had a gun, but he was unable to hold the deceased. Under the facts and law of the case, we are of the opinion that there was a provocation; that appellant acted immediately upon the provocation, and upon no other motive, and is guilty of no higher degree of culpable homicide than manslaughter.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Judges all present and concurring.