### JIM GILFORD v. THE STATE.

#### No. 4159. Decided November 18, 1908.

**1.—Assault to Murder—Indictment.**

Upon trial for assault with intent to murder where the indictment used the word "murder" in respect to the party injured, and not the word "kill," the same was sufficient. Following Martin v. State, 40 Texas, 19; Mills v. State, 13 Texas Crim. App., 487; Gordon v. State, 23 Texas Crim. App., 219.

**2.—Same—Charge of Court.**

Where upon trial for assault with intent to murder the court charged on all the issues raised by the evidence in the case, and the same was unassailable in substance, the same was sufficient although perhaps subject to criticism in merely matters of phraseology.

**3.—Same—Sufficiency of Evidence—Identity—Alibi.**

Where upon trial for assault with intent to murder, there was much evidence which would have supported a verdict for aggravated assault, yet the State's evidence showed that defendant fired at the injured party with a shotgun striking the defendant with shot; that there was ill-will between defendant and the injured party; that the defendant was identified by two State's witnesses, etc., that defendant's proof of alibi was not so well established as to render improbable his presence at the scene of the shooting, etc., a verdict of assault with intent to murder was sustained by the evidence.

**4.—Same—Charge of Court—Adequate Cause—Words and Phrases.**

While it is not required that both pain and bloodshed should be caused by the assault and battery to constitute adequate cause, still where the evidence is undisputed that the blows inflicted by the party injured upon defendant had caused both pain and bloodshed, there was no error in the court's charge in using the conjunctive instead of the disjunctive with reference to these terms.

Appeal from the District Court of Walker. Tried below before the Hon. S. W. Dean.

Appeal from a conviction of assault with intent to murder; penalty, seven years imprisonment in the penitentiary.

The opinion states the case.

*Dean, Humphrey & Powell,* for Appellant.—On question of insufficiency of evidence: Riles v. State, 106 S. W. Rep. 358. On question

of insufficiency of indictment, Smith v. State, 19 S. W. Rep., 546; Strickland v. State, 19 Texas Crim. App., 518; Caldwell v. State, 28 Texas Crim. App., 576; Hewitt v. State, 15 Texas Crim. App., 80; Gordon v. State, 23 Texas Crim. App., 219.

*F. J. McCord,* Assistant Attorney-General, and *Hill & Elkins,* for the State.

RAMSEY, JUDGE.—Appellant was indicted in the District Court of Walker County charged with assault with intent to murder one John Nixon. On trial he was convicted, and his punishment assessed at confinement in the State penitentiary for a term of seven years. He has appealed to this court, and seeks a reversal of the judgment of conviction on many grounds, the more important of which we will now consider.

1. Among other things, it is urged that the indictment on which appellant was tried is insufficient, and that the court erred in overruling his motion in arrest of judgment. This indictment, omitting the formal parts, is as follows: "That Jim Gilford on or about the 12th day of October, one thousand nine hundred and seven, and anterior to the presentment of this indictment in the County of Walker and State of Texas, did then and there unlawfully with his malice aforethought, make an assault in and upon John Nixon with the intent then and there to murder the said John Nixon." The complaint, substantially, is that the indictment is insufficient in that it uses the word "murder" in respect to the said John Nixon, and not the word "kill" as should have been done. On this question appellant submits a lengthy and quite vigorous argument. The contrary, however, has been held for more than a generation, and notwithstanding the learned and elaborate dissenting opinion of Judge Hurt in the case of Gordon v. State, 23 Texas Crim. App., 219, the court in that case used the following language: "A majority of the court are of the opinion that the indictment in question, being a valid indictment at the time of the adoption of our Constitution, is not subject to the objections made to it by Judge Hurt. We can see no sufficient reason, and no practical good, at this late day, in disturbing, or even questioning, the previous decisions upon this subject." Such also was the holding of the court in the cases of Martin v. State, 40 Texas, 19, and Mills v. State, 13 Texas Crim. App., 487. We have no doubt of the correctness of these decisions, and we should, in any event, feel bound by the unbroken line of decisions by this court.

2. Many complaints are made to the charge of the court. However, these matters are not briefed. We have examined them all carefully, in the light of the record, and believe that the charge is not subject to any serious criticism. The court defines all the essentials of assault with intent to murder, as well as aggravated assault, deadly

weapon, malice and its ingredients, the doctrine of self-defense based on reasonable apprehension of death or great bodily harm, both in respect to the appellant as well as to one Jackson, who will be hereafter referred to in the testimony; gives the law in respect to cooling time, and submits the issue of alibi as well as a charge on circumstantial evidence. Indeed, while perhaps subject to criticism in merely matters of phraseology, the charge is unassailable, in substance.

3. The next substantial ground of complaint, presented in the brief of appellant, is that assailing the verdict of the jury. This is raised in many ways, and is the subject of a number of assignments. It is claimed that the verdict of the jury is contrary to the evidence, unsupported by the evidence, and without evidence to support it, in that it fails to show that appellant was the person who fired upon John Nixon; and that the evidence is insufficient to show that appellant and no other person fired the shot which took effect in John Nixon; that it wholly fails to exclude the hypothesis that some other person than the defendant fired the shot which took effect in the injured party. It is urged the evidence taken together shows that if appellant fired the shot as claimed, that he did so under the immediate influence of sudden pain arising from adequate cause, to wit: assault and battery which had, a short time before that, been made upon him as well as the conduct of Nixon and his companions in unlawfully restraining him of his liberty and threatening him with great bodily violence, humiliation and death in the event he disclosed the names of the parties who committed the assault upon him. While there was much evidence, to our minds, which tends to support the theory that the assault, if any, made by appellant was not above the grade of aggravated assault, we are not prepared to hold that there is no evidence upon which the jury were justified in finding him guilty of the more serious offense. We deem it unnecessary to do more than make a general statement of the more inculpatory facts relied on by the State.

It seems on the evening in question, that while with a number of other persons (white men) that appellant, as the witnesses say, butted into the crowd, and walked up against Nixon, who asked him whose negro he was, and appellant replied: "I ain't no damn white man's negro," and also said something about white son-of-a-bitch, when Nixon and a man named Watson both struck him and knocked him down, and, as all the witnesses say, blooded him. After this they took appellant down to the icehouse, but did not further molest him. A short time before that the same crowd of white men had whipped a negro named Red. The cause for this and the circumstances are not set out at length in the record. Soon after this, however, they, for some purpose, stopped a negro named Jackson, Nixon catching him by the sleeve and telling him to wait a minute, when Jackson jerked loose from him, threw his hand to his pocket and drew a gun.

The crowd, it seems, then carried Jackson down to the railroad track with a rope around his neck and gave him a whipping. That while this was going on, it seems, Watson heard a noise at some little distance from where they were, and he and Nixon went to see what it was, and that they stopped near to where some ties were stacked along the railroad track. Here, without warning, two shots were fired from a shotgun, one striking Nixon, and the other probably fired at Watson. Nixon was struck with over one hundred No. 4 shot, covering a place about six inches from the point of his knee up as high as his groin. Nixon's testimony, if believed, identifies appellant as being the person who fired on him. He says in his direct examination, without qualification, that appellant shot him; that he was at the time about twenty steps from him; that he knew and recognized the bulk of the man that shot him to be Jim Gilford, and he was close enough to know that he was a negro, as he puts it, a ginger colored negro. "He seemed to be about the size of Jim Gilford and the color of Jim Gilford, and it was him." It also appears that at the time he stated he recognized Gilford. Before this, and after appellant was released at the icehouse, he went to where his horse was hitched, and put some bundles in the corner of the fence, got on his horse and rode in the direction of Kemitchett's store, and in a short time came back in a hurry, got his bundles, and went off in the direction of the depot. On the same night and about a half-hour before the shooting, he went to Kemitchett's store and purchased a box of 12 gauge shells with No. 4 shot. At this place he was asked (being bleeding at the time) what had hurt him, and replied that a horse had hurt him. The next morning, near the scene of the shooting, there were five shells found, two empty ones and three loaded ones. They were all 12 gauge shells, and the same color and description as the ones sold appellant. Some importance seems to have been attached to the imprints of tracks near where the person doing the shooting stood. It was stated that this track looked to be about a No. 8 shoe and turned over a little and hooked around the point. The same witness testified that he saw appellant make a track the next day, and that this track showed the shoe to run over a little and hooked around the point. There was, however, it seems, no precise measurement of the track. Appellant was located by the testimony of J. A. Hill within a few hundred feet of the place of the shooting about five minutes prior to the time the shots were fired, and that at the time he was going in the direction of where Nixon was shot. That this person was riding a roached mane pony of a dark brown color. Hill further says, "From the general appearance and everything that night, when the party rode up on the railroad track, I knew the pony and I knew the man. I could tell it was a roached mane pony." He says, however, he could not tell whether this person

514 . 54 Texas Criminal Reports. [Tyler,

was white or black, but judging from the general appearance of the man, it was appellant. It was also shown by the State that there was some animosity and ill-will between appellant and Nixon growing out of the fact that Nixon was a witness against appellant's brother who was charged with theft and burglary.

Appellant undertook to prove and introduced considerable evidence with reference to an alibi, but, as we think, it is not of necessity so well established as to render improbable his presence at the scene of the shooting. In view of the entire record, we do not believe we would be justified in holding that the evidence was so wholly insufficient to show appellant's guilt as would justify us in setting aside the finding of the jury affirming it.

4. There is only one complaint of the charge of the court which we think needs any discussion. In the tenth paragraph of the court's charge he instructs the jury, as follows: "The following is deemed adequate cause: An assault and battery causing pain and bloodshed." We have held in numerous cases that such a charge was erroneous. The statute is that, "An assault and battery causing pain or bloodshed is an adequate cause." It has been frequently held that to constitute this ground of adequate cause, it is not required that both pain and bloodshed should be caused by the assault and battery, and that either is sufficient. High v. State, 26 Texas Crim. App., 545; Spivey v. State, 30 Texas Crim. App., 343; Childers v. State, 33 Texas Crim. Rep., 509; Bonnard v. State, 25 Texas Crim. App., 173, and Tickle v. State, 6 Texas Crim. App., 623; Garner v. State, 45 Texas Crim. Rep., 308. However, in this case, all the testimony showed that the blows inflicted by Nixon and Watson upon appellant had caused both pain and bloodshed. This was undisputed and was proven by all the witnesses. The charge of the court must, of course, have relation to the facts, and where, as in this case, there could be no doubt or question that said blows caused both pain and bloodshed, we do not think the charge of the court erroneous. It applied the law to the unquestioned facts of the case.

There being, as we believe, no error in the proceedings below, the judgment of conviction is affirmed.

*Affirmed.*

[Rehearing denied.—Reporter.]