FRANK & BILL PINKERTON V. THE STATE.

No. 6068.   Decided June 24, 1921.

**1.—Murder—Malice—Malice Aforethought—Charge of Court.**

Where, upon trial of murder, the court in his charge on malice did not materially depart from definitions approved by this court, there was no reversible error. Following Martinez v. State, 30 Texas Crim. App., 129, and other cases.

**2.—Same—Express Malice—Rule Stated—Former Statutes.**

Where, upon trial of murder, defendant's punishment was fixed at a term of imprisonment of less duration than would, under the old law, have applied to murder in the first degree, the failure to define express malice cannot be the basis of just complaint; besides, express malice is now relegated to cases relating to the denial of bail and to those in which the death penalty is assessed.

89 Tex.—42

3.—Same—Requested Charges—Practice on Appeal.

On trial of murder, there was no error in refusing the requested charges to the effect that unless the defendant and his companions had the intent to kill or do bodily harm at the time he went to the deceased's place of business, he would not be guilty of murder.

4.—Same—Provoking Difficulty—Charge of Court.

Where the court correctly charged on provoking the difficulty there was no reversible error on that ground.

5.—Same—Self-defense—Charge of Court—Requested Charges—Words and Phrases.

Where there was no defect in the court's charge on self-defense which the requested charge would have tended to correct, there was no reversible error; besides, the requested charge refused was misleading, leaving the jury unadvised as to what the court meant by the word "interfering."

6.—Same—Principals—Charge of Court—Rules Stated.

Where, upon trial of murder, the court's charge on the law of principals used the correct definition of the law of principals, in applying the same to the facts, there was no reversible error. Following Middleton v. State, 86 Texas Crim. Rep., 307, and other cases.

7.—Same—Circumstantial Evidence—Charge of Court.

Where, upon trial of murder, the evidence showed that both of the defendants took part in the difficulty with deceased, there was no error in the court's failure to charge on circumstantial evidence.

8.—Same—Manslaughter—Charge of Court—Adequate Cause.

Where, upon trial of murder, a part of the court's charge on manslaughter was not accurate, and besides, as a whole, was too restrictive in that it confined the jury, in deciding whether there was adequate cause, to an assault producing pain and bloodshed as made by the deceased, and ignored the other facts and circumstances in evidence, upon which the jury might have predicated the finding of adequate cause, the same was reversible error.

9.—Same—Rule Stated—Adequate Cause—Rule Stated.

The enumeration in the statute of matters constituting adequate cause is not exclusive of others, but where there is evidence of existence of one of the statutory causes, and there are other facts that should be considered in connection therewith, on the issue of manslaughter a charge of the court which ignores these other facts is not sufficient. Following Childress v. State, 33 Texas Crim. Rep., 511, and other cases.

Appeal from the District Court of Erath. Tried below before the Honorable J. B. Keith.

Appeal from a conviction of murder; penalty, fifty years imprisonment in the penitentiary.

The opinion states the case.

*Mack Taylor,* and *J. A. Johnson,* and *P. L. Pittman,* for appellant.— On question of express malice: Sharpe v. State, 17 Texas Crim. App., 499, and cases cited in opinion.

On question of court's charge on principals: Guffie v. State, 8 Texas Crim. App., 187; Menefee v. State, 149 S. W. Rep., 141; Lott v. State, 127 id., 192.

*Alvin M. Owsley,* Assistant Attorney General, for the State.

MORROW, PRESIDING JUDGE.—The conviction is for murder; punishment fixed at confinement in the penitentiary for fifty years.

The appellants and other young men, including a boy by the name of Brown, and one named Brandon, were in the village of Lingleville, and late in the afternoon the Brown boy and the Brandon boy had a difficulty in which insulting language was used. Later all of the parties mentioned went to a singing, and after the singing to a restaurant in which the deceased was working. The difficulty between Brown and Brandon was renewed. Brandon, who, according to some of the evidence, was larger than Brown, and was getting the better of the conflict, Brandon having him down on the porch when the appellant, Frank Pinkerton, was called upon by Brown for help. Frank Pinkerton got hold of the Brandon boy and was in the act of pulling him off when the deceased appeared and remonstrated with the appellant, Frank Pinkerton, and objected to his interfering with the conflict. The appellant, Bill Pinkerton, engaged in the conversation and both of the appellants were struck by the deceased. Subsequently, it appears that in the fight that ensued Frank Pinkerton cut the deceased with a knife and he was shot by Bill Pinkerton.

The issues of murder, manslaughter, self-defense, provoking the difficulty, and the law of principals were submitted to the jury.

Appellants excepted to the charge upon the ground that malice aforethought was not properly defined. Without quoting the charge upon that subject, we will say that we find in it no material departure from definitions approved by this court. Martinez v. State, 30 Texas Crim. App., 139; Branch's Crim. Law, Sec. 421; Gallagher v. State, 28 Texas Crim. App., 247; Ellis v. State, 30 Texas Crim. App., 604. In connection with this exception, a special charge was requested which embodied the definition of express malice. See Miller v. State, 32 Texas Crim. Rep., 321; Martinez v. State, 30 Texas Crim. App., 137.

The precedents touching the proper definitions of express malice are found mainly in cases arising before the statute abolishing the degrees in murder was enacted and in cases in which the conviction is for murder in the first degree, the penalty for which was life imprisonment or death. In the decisions mentioned, generally speaking, the charge on murder in the first degree, which was inaccurate in defining express malice, would not authorize a reversal of the judgment wherein the conviction was for murder in the second degree. Halbert v. State, 3 Texas Crim. App., 658; other cases listed in Branch's Ann. Tex. Penal Code, page 1158.

Appellants' punishment having been fixed at imprisonment for a term of less than would, under the old law, have applied to murder in the first degree, we think the failure to define "express malice" cannot be the basis of a just complaint. If not rendered altogether unnecessary, the importance of defining "express malice" was much modi-

fied by the statute abolishing degrees in murder. It is conceived that under the present law, the subject of "express malice" is relegated to cases relating to denial of bail, and those in which the death penalty is assessed.

The requested special charge embracing a number of matters was refused. In substance, the special charge was to the effect that the offense would not be murder unless at the time the appellants went to the place of business of the deceased with the intent to kill him or inflict upon him serious bodily wounds; that if at the time they went to the place of business the intent to kill or do bodily harm existed in the mind of one of the appellants without the knowledge of the other, the latter would not be guilty of murder, though he inflicted the fatal wound.

In the special charge was also embodied the idea that if the appellants went to the place of business of the deceased with the intent to assault him, but not with the intent to kill or seriously injure him, there would be no conviction for murder. All of these phases of the special charge are properly disregarded. It was not necessary that the proof show that the appellants or either of them entertained the intent to kill or do serious bodily harm at the time they went to the place of business of the deceased. Such a design might have been subsequently formed and still their acts embrace all of the elements of murder. The court fully instructed the jury, in connection with his charge on provoking the difficulty, in an appropriate language in telling them that although the difficulty was provoked by them by acts reasonably calculated and intended to do so; if the intent was to do a minor injury and not to kill or inflict serious wounds, that murder could not result.

Another phase of the special charge is embodied in the proposition that if the appellants were seeking to protect Brown from the assaults of Brandon and the deceased "interfered" that the right existed in the appellants to exert such force as was necessary to prevent the deceased from "interfering" and that if the deceased assaulted them, they had a right to use the force necessary to defend, viewing the danger from their standpoint.

There was no defect in the court's charge on self-defense, which the special charge mentioned would have tended to correct. It was misleading, leaving the jury unadvised as to what the court meant by "interfering." It was undisputed that he did interfere with him but at what stage of the proceedings, if at all, his interference went beyond a mere verbal protest was the subject of the controversy.

The requested special charge was improperly drawn, failing to segregate and submit individual charges to the several propositions contained, but if this course has been followed, its refusal was nevertheless proper. It ignores the motive which controlled the entry of the appellant, Frank Pinkerton into the conflict between Brown and Brandon. It takes no note of the evidence touching the character of the supposed interference, and is drawn without reference to the evidence

suggested that the conflict with the deceased was voluntarily brought on by the appellants with the intent to injure him. The right of the appellants to use force upon the deceased would not have accrued while his so-called interference was merely verbal and their right in the conflict with him was subject to modification by the jury as to who began and who caused the encounter.

The appellants and one, Monday, and the Brown boy were together. There was evidence that after the singing they went to the place of the deceased together; that in the fight betwen Brown and Brandon, the appellant, Frank Pinkerton, was called upon by Brown and sought to interfere; that the deceased protested; that a quarrel ensued in which epithets were used, at least by the appellant, Frank Pinkerton; that both Frank and Bill Pinkerton were struck by the deceased; that in the struggle that ensued, the deceased was seriously wounded with a knife and shot with a pistol.

We discern no substantial defect in the definition of the charge on principals. See Middleton v. State, 86 Texas Crim. Rep., 307; Branch's Ann. Tex. Penal Code, Sec. 685-686.

That both of the appellants took part in the conflict with the deceased does not admit a doubt under the evidence. The charge on circumstantial evidence, therefore, was not required.

In applying the law to the facts, the following language is used:

"If therefore you believe from the evidence in this case, beyond a reasonable doubt, that in the County of Erath and State of Texas, and on or about the 16th day of May, 1920, that the deceased Newman Bostic committed an assault and battery upon either Bill or Frank Pinkerton or both of them, causing pain or bloodshed, and that Bill Pinkerton and Frank Pinkerton were both present at said time and place, and under the influence of sudden passion caused by such assault, if any, and battery, if any, either Bill or Frank Pinkerton shot and killed Newman Bostic and adequate cause existed for such killing, and that the other acted together with the party doing the shooting and killing as a principal as that term has been defined herein and that the said Bill Pinkerton or Frank Pinkerton had not provoked the contest or difficulty with the deceased, with the intention of killing him, then you will find the defendants guilty of manslaughter and assess their punishment at confinement in the penitentiary of this State for any term of years not less than two nor more than five, in your discretion."

In some respects the paragraph of the charge on manslaughter which has been quoted, is not accurate. If the jury believed from the evidence that an assault and battery, causing pain or bloodshed was committed by the deceased against Frank Pinkerton, such an assault and battery would have been sufficient, as a matter of law, to reduce the offense to manslaughter. It was not necessary, to avail himself of this mitigating matter, that the proof should show, beyond a reasonable doubt, that the assault was made.

It is urged that the charge on manslaughter was too restrictive in that it confined the jury, in deciding whether there was adequate cause, whether an assault producing pain or bloodshed was made by the deceased. It is insisted that there were other facts upon which the jury might have predicated the finding of adequate cause. There was evidence that the deceased was a taller and stronger man than either of the appellants; that he was a fighting man; that his brother, about nineteen years of age, larger and stronger than he, was present; and some evidence that another brother was likewise there. Touching the relative size and strength of the Brown boy and the Brandon boy, the evidence is somewhat indefinite, though it appears certain that the Brandon boy was larger; and some testimony went to show that he was double the size of Brown. The appellants and Brown were companions. While Brandon was assaulting Brown and had him down upon the floor, he called to the appellant, Frank Pinkerton, to pull him off. The language used is in dispute, some witnesses saying that he added: "Pull the son-of-a-bitch off." It is clear that when Frank Pinkerton started to comply with this request, Bostic, the deceased, entered the controversy, and a quarrel took place between him and the appellant, Frank Pinkerton. All that was said is not disclosed, and various versions are given by different witnesses. Some of the State's witnesses say that when the appellant, Frank Pinkerton, failed to desist or protested against the interference of the deceased that the latter said: "You heard me, Frank, let him alone." Frank replied: "Shoot you God-damn son-of-a-bitch, you are faded;" and that the deceased said: "Shoot, hell, I have nothing to shoot with;" that the brother of the deceased pulled off his coat and started to enter the fight stating that he could whip any "damn thing" out there. The deceased said: "Let him alone; don't start any trouble." During the quarrel between Frank Pinkerton and deceased, the appellant, Bill Pinkerton, according to some of the witnesses, interposed with the expression: "Hell, if you want anything, we are raring to go;" that Bill was hit by the deceased and backed off, and Frank hit the deceased with his fist. It was night-time. The deceased was angry. The State proved that the appellants, after the fight, had no bruises upon them; that the deceased in ordering Frank Pinkerton to desist in his interference, used an oath towards him.

The enumeration in the statute of matters constituting adequate cause is not exclusive of others, (Penal Code, Art. 1130) and where there is evidence of existence of one of the statutory causes, as in the case before us, and there are other facts that should be considered in connection therewith on the issue of manslaughter, a charge which ignores these other facts, is generally regarded as inadequate when to it there are appropriate exceptions. Articles 1131 and 1132, Vernon's Texas Crim. Statutes, Vol. 1; Art. 1138, Vernon's Texas Code of Crim. Proc.; Childers v. State, 33 Texas Crim. Rep., 511; Orman v. State, 24 Texas Crim. App., 503; Brown v. State. 54 Texas Crim. Rep., 127.

Omitting a detailed discussion of the authorities, we are of opinion that under the evidence the court was not warranted in confining the jury in passing upon the issue of manslaughter to the single phase of the testimony which related to a blow producing pain or bloodshed. It was a matter of inference only that the blow produced pain or bloodshed. Assuming, however, that the jury drew such inference, there were other facts which might have accentuated its effect upon their minds in determining whether the appellants were influenced by passion rendering their minds incapable of cool reflection.

The language used by the counsel for the State in argument doubtless will not be repeated upon another trial.

The error of the court in the charge on manslaughter, in our opinion, requires a reversal of the judgment, and it is so ordered.

*Reversed and remanded.*